**In re Richard C. SOVISH, Marc F. Moisson, and Frank K.A. Selleslags.**

**Appeal No. 85-781.**

United States Court of Appeals, Federal Circuit.

July 26, 1985.

James W. Geriak, Lyon & Lyon, of Los Angeles, Cal., argued, for appellants. With him on brief were Roy L. Anderson and William E. Mouzavires, Lyon & Lyon, Washington, D.C.

Fred W. Sherling, Associate Solicitor, U.S. Patent & Trademark Office, Arlington, Va., argued, for appellee. With him on brief were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Sol., Washington, D.C.

Before RICH, Circuit Judge, COWEN, Senior Circuit Judge, and NIES, Circuit Judge.

RICH, Circuit Judge.

This appeal is from the decision of the U.S. Patent and Trademark Office (PTO) Board of Appeals (board) affirming the examiner's rejection of claims 1–6, 8–10, 15–17, 19, 21–23, and 31–34 of application serial No. 79,335, filed September 22, 1979, for "Heat Recoverable Article," by Richard C. Sovish, Marc F.L. Moisson and Frank K.A. Selleslags (Sovish). Some claims (24–30) have been allowed. Others, to a non-elected invention, were withdrawn. We affirm.

### The Invention

In numerous wiring systems such as electrical supply, telephone, cable TV, and the like, junctions or outlet boxes are used, into and out of which wires or cables pass. Such boxes may be made at least in part of heat-recoverable material or have aperture members made thereof, their characteristic being that when heated they shrink, return, or "recover" to a smaller size and thereby are able to close upon a cable or the like to form a hermetic seal. The invention relates to the temporary or permanent plugging of such aperture members and involves a novel plug in the form of a cylindrical hollow body (first part) closed at one end by a cap (second part). This plug may be positioned in an aperture member or conduit to close it until such time as it is desired to insert a cable or the like therethrough, the aperture member then being shrunk around the plug by heating. When the cable is to be inserted, the cap or "second part" is first knocked off, the cable passed through the "first part" or hollow body, and the aperture member further or again heated. This will cause the tubular part of the plug to be forced out, extruded, or "milked out" as the application says (presumably by analogy to milking a cow), due to its tapered shape. The aperture member will then shrink tightly upon and seal the cable. The following figures from the drawings will give an understanding of the invention's structure.

FIG. 3.

FIG. 4.

FIG. 5.

FIG. 6.

Fig. 4 illustrates an aperture member 4a which is an outlet or inlet portion of a junction box or the like (not shown). Before use it has a diameter $s$ and upon heating can shrink or "recover" to a diameter $t$.

Fig. 3 shows a complete plug having a tubular body 3, cylindrical on the inside and tapered on the outside as shown at 4, the thinnest end being integrally joined with end-cap 5 (second part) having a diameter $m$. Where the cap and body join, the plug is weakened by a circumferential groove 6.

Fig. 5 shows the plug in the aperture member which has been partially preshrunk into close contact with the outer tapered surface 4 of the plug, securing it in place.

Exploded view 6 shows the cap 5 severed from the body 3, a cable 7 extending through aperture member 4a, which is now shrunk closely around the cable, the tubular body 3 of the plug having been removed from member 4a. The plug being made of relatively fragile material, the body 3 may be removed from the cable 7 by breaking it up.

The appealed claims define the invention as an *article* including the heat-recoverable conduit and the plug. Claim 1 is illustra-

tive of the independent claims on appeal, 1, 21, 31, and 33:

1. An article having a *heat-recoverable* conduit therein, said conduit being provided with a plug or cap member comprising:

(a) a first hollow part which is coaxial with the conduit and in contact with a wall thereof, and

(b) a second part which blocks the conduit, the second part being so attached to or so in engagement with the first part that it can at least partially be detached or disengaged so as to leave the conduit open with the first hollow part still in position in contact with the conduit *but removable or deformable* so that recovery [of the conduit] can be effected. [Emphasis and bracketed insert ours.]

### The Rejection

The appealed claims are all rejected on the same legal ground, "under 35 USC 103 as unpatentable over Weagant in view of Esher." These references are:

| | | |
|---|---|---|
| Esher | 2,628,264 | Feb. 10, 1953 |
| Weagant | 3,395,382 | July 30, 1968 |

### The References

Reproduced below is a portion of Esher's Fig. 1, showing how his plug is used in an electrical wiring junction box 10, Fig. 2

showing a complete plug, and exploded view, Fig. 4, showing the plug with its cap 19 removed and its bottom 21 knocked out, severed from the tubular body 14 along the line of circular scoring 22. The plug is disclosed as used in metal conduits 11 and is made of insulating plastic material. Its main purpose is to close the conduits during building construction to keep plaster, concrete, dirt, etc., out of the conduits. Use of the top cap 19 is optional; it forms a sealed chamber in the plug in which conduit information can be left on a slip of paper 24, as seen at the left side of Fig. 1. The bottom 22 can be broken out by a blow as shown at 27 because of score line 22. Taper 15 facilitates insertion in a conduit. No heat-recoverable or heat-shrinkable parts are disclosed. There is no tight fit between wiring 25 and the plug. The plug may be left in the conduit as an insulating collar.

R. R. ESHER

Weagant, in relevant part, discloses a hermetically sealed electrical junction box A adapted to receive a number of insulated conductors or cables 10,10′ through a cap 14 resembling an automobile engine distributor cap. The openings into the cap are in the form of sleeves 22 and are made of heat-shrinkable material. Until used, they are closed with simple solid plugs 26 like corks in wine bottles, as shown in part of Fig. 1 and Fig. 2, below. We quote below the totality of the disclosure in this reference pertaining to the plugs.

FIG_1

FIG_2

In the general discussion, the specification says:

> Another feature and advantage of this invention is the provision of a connector assembly as described above with removable plugs positioned within certain of the tubular legs so that additional conductors can be added and hermetically sealed in the assembly from time to time as desired.

In the detailed description is the following:

> In applications where cables are desirably added and sealed subsequently, a plug 26 is sealed into open legs 22 by application of slight heat. These plugs can be removed subsequently and replaced by a conductor 10. Only when it is desired to utilize a specific tubular passage is the particular plug 26 removed therefrom to allow insertion of a conductor 10. It will be apparent to one skilled in this art that plugs 26 may be removed in a number of ways such as by mechanical force typically with slight heat.

It is also noted that the specification had previously stated that the inside surface of legs 22 might be coated with a non-setting, non-sagging sealant adhesive such as a semithermoplastic sealant which would soften upon application of heat, and which would flow around a cable when it took the place of a plug.

The examiner, whose rejection the board affirmed in toto, applied the teachings of the above references in support of his obviousness rejection by the following line of reasoning: Weagant shows an article with a plurality of heat-recoverable conduits in which there are plugs 26, the material of the plugs being a "matter of design choice." It would have been obvious in view of Esher to provide a plug of rigid but fragile material with a hollow, deformable first part and a detachable second part blocking the conduit but detachable via a line of weakness or groove.

This PTO reasoning, it appears to us, is tantamount to saying that it would have been obvious to one of ordinary skill to use a plug like Esher's in place of Weagant's plug 26.

## OPINION

We dispose first of a basic but baseless contention. Appellants argue that the two references are from "non-analogous art." When the argument actually presented under this heading is analyzed, however, it does not pertain to the question whether the art is or is not "analogous," as that term is generally used in patent law, i.e., too remote to be treated as "prior art," but to the structural and operative *differences* which might lead one to conclude that appellants are claiming non-obvious improvements notwithstanding the references.

The art here involved is the art of plugging, permanently or temporarily, an opening in a conduit for electrical cables or similar devices. Appellants' invention relates, more specifically, to doing the plugging in such a manner as to give ready access for the installation of cables at a future time. Both Esher and Weagant clearly pertain to the same general subject matter and are, of course, analogous art. To so label it merely connotes that it is relevant to a consideration of obviousness under § 103 as "prior art."

Quoting from § 103, the sole question before us is whether the PTO erred in deciding that "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." The "subject matter as a whole" is not, of course, appellants' specifically *disclosed* structure, the patentability of which the PTO is not questioning since it has allowed some claims. It is, rather, the subject matter of the *appealed claims*. This is what is presently "sought to be patented" and is, therefore, the sole object of our present consideration. We have, in consequence, carefully examined each appealed claim and considered its limitations and find ourselves in agreement with the PTO that *what is claimed* would have been obvious from the combined *teachings* of the references. Appellant's difficulty lies in the breadth of the claims.

Appellants have argued at length about the "propriety" of "combining the two references" as though the question is simply whether the Esher patent suggests within its four corners using the disclosed tubular, closed-end plug in a heat-recoverable aperture member or conduit or whether Weagant similarly suggests using an Esher type plug in place of his cork-like plug 26. That is not the proper approach to the issue, which is whether the hypothetical person of ordinary skill in the relevant art, *familiar* with all that Esher and Weagant disclose, would have found it obvious to make a structure corresponding to *what is claimed*. See *Kimberly-Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1449, 223 USPQ 603, 610 (Fed.Cir.1984). We conclude that such hypothetical person would have found obvious what claim 1, for example, delineates, applying such "ordinary skill" as he (or she) is presumed to possess.

Adverting to claim 1 reproduced early in this opinion, Weagant discloses the heat-recoverable conduit provided with a plug or cap as stated in the first clause. One of ordinary skill surely would appreciate that a solid plug is not the only way to close a hole in a pipe. Appellants frequently advert in argument to a "problem," which was how to close a conduit of heat-recoverable material in such a way as to get into it with a cable, even in the presence of some heat, without having it shrink too far or too soon. Looking to claim 1, their *claimed* solution was to use a plug having the characteristics defined in clauses (a) and (b) which, by our analysis, are a quite accurate description of the structure disclosed in Esher. Put another way, parts (a) and (b) of claim 1 read on Esher so far as structure is recited. Appellants argue that Esher did not intend to *remove* his plug from the conduit after knocking the bottom out of it, but to leave it in place as an insulator. But structurally, Esher's plug body is as removable from the conduit as it is insertable and just as removable as Weagant's plug. Esher also contains and teaches the use of a score line to make a closure portion ("second part") detachable. In short, if one put an Esher-type plug into Weagant's heat-recoverable conduit with no more change than to make it the right size, one would have the subject matter of claim 1. We therefore agree with the propriety of the rejection.

In similar fashion we have considered the other independent claims and reach the same conclusion. We have also found no limitation in any dependent claim which would have made its subject matter unobvious in light of the references.

Finally, appellants contend that even if it were proper to "combine" the references,

whatever they may mean by that, they would "neither meet the terms of the appealed claims nor result in a useful device." The question here, however, is not meeting the terms of the claims. The rejection is for obviousness of what is claimed, which involves consideration of the ordinary skill of the art. As for resulting in a useful device, appellants are talking about Esher's plug not being removable and being left in the conduit which, they say, "would prevent effective heat recovery." They are assuming that one of ordinary *skill* would not appreciate that Esher's hollow member 14 could be removed if it is not wanted, as insulation or otherwise, and that it *would* not be removed by a skilled worker who wished to allow heat recovery of the conduit in which it was placed. This argument presumes stupidity rather than skill.

The decision of the board is *affirmed.*

AFFIRMED.