NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

—————————————

(Serial No. 11/322,051)

**IN RE SHELDON BREINER**

—————————————

2011-1387

—————————————

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences

—————————————

Decided: May 10, 2012

—————————————

JAMES S. MCDONALD, of Fremont, California, for appellant.

RAYMOND T. CHEN, Solicitor, United States Patent & Trademark Office, of Alexandria, Virginia, for appellee. With him on the brief were BRIAN T. RACILLA and SYDNEY O. JOHNSON, JR., Associate Solicitors.

—————————————

Before RADER, *Chief Judge*, LINN, and WALLACH, *Circuit Judges*.

RADER, *Chief Judge.*

The Board of Patent Appeals and Interferences affirmed the examiner's rejection of all pending claims of U.S. Patent Application No. 11/322,051 (filed Dec. 29, 2005) (the "'051 application"). *See Ex parte Sheldon Breiner*, No. 2010-009969 (B.P.A.I. Nov. 9, 2010). Dr. Sheldon Breiner is the named inventor of the '051 application. On February 10, 2011, the Board denied Dr. Breiner's petition for rehearing. *Ex parte Sheldon Breiner*, No. 2010-009969 (B.P.A.I. Feb. 10, 2011). Because the Board correctly determined the claims at issue are obvious to one of ordinary skill in the art, this court affirms.

## I.

The '051 application claims systems and methods for collecting and disseminating data. The goal of the invention is to solve problems associated with efficiently collecting and reporting human-observable data from far-flung sources. '051 application at 0014. According to the specification, clients send information requests to a centralized computer. *Id.* at 0042. The information request may ask for, among other things, weather conditions, traffic conditions, the number of vehicles in a parking lot, or prices and brands carried by a retailer. *Id.* at 0052. The computer server wirelessly transmits the information requests to GPS-enabled wireless communication devices carried by a plurality of agents. *Id.* Each agent obtains and sends the requested data back to the computer server. *Id.* The agent's geographic location is also sent to the server. *Id.* The computer server then analyzes the collected data and generates a report for the client. *Id.* at 0023. Independent claim 1 is representative:

1. A system for collecting data observed by a plurality of human agents, and for converting the data into

information desired by a client, the system comprising:

  a. a computer server which is programmed (i) to receive client requests for information, the requests being received via Internet browser-based interfaces, (ii) to prepare instructions to be carried out by a plurality of human agents to collect data relevant to the client requests, the human agents being at locations remote from the computer server, and at least one wireless communication device being associated with each of the plurality of human agents, and the instructions to each human agent comprising instructions to observe a variable at a location and *with a frequency for the periodic observation of the variable at the location*, the variable to be observed by the human agents at the different locations being the same, (iii) to download the instructions wirelessly to the wireless communication devices associated with the human agents, (iv) to upload data sent wirelessly to the computer server by the wireless communication devices associated with the human agents and (v) to analyze and convert the uploaded data into information desired by the client;

  b. at least one wireless communication device associated with each of the plurality of human agents, each of the wireless communication devices being (i) wirelessly interfaced to the computer server and (ii) *equipped with a positioning means for determining the location of the device* and with means for wirelessly up-

loading the location of the device to the computer server; and

c. operating means for receiving data uploaded to the server from the wireless communication devices associated with the human agents, and for analyzing and converting the received data into information for disseminating to the client.

*Id.* at claim 1 (emphasis added). The examiner rejected claim 1 of Dr. Breiner's application as obvious in view of U.S. Patent Application No. 2006/0015755 (filed Jul. 16, 2006) ("Jaffe") in combination with U.S. Patent Application No. 2002/0019820 (filed Sep. 24, 2001) ("Marcus") and U.S. Patent No. 6,584,401 (filed Nov. 27, 2001) ("Kirshenbaum"). *See* Office Action of Dec. 23, 2008.

The examiner relied on Jaffe as the primary reference. Jaffe claims methods and systems for collecting data that can be used for, among other things, marketing and sales purposes. Jaffe at 0001. Jaffe discloses a data requestor that sends emails to various agents. *Id.* at 0003. The emails contain an electronic form called an "information collector." *Id.* Each agent obtains and inputs data into the information collector. *Id.* The agents then send the information collector back to a central computer. *Id.* at 0033. The computer processes the data to create reports for the data requestor. *Id.* at 0035.

The examiner found that Jaffe expressly disclosed every element of the '051 application except "wireless communication device equipped with a positioning means." Examiner's Answer of Feb. 18, 2010, at 4-6. To fill this gap, the examiner relied on Kirshenbaum and Marcus. *Id.* at 6. Kirshenbaum discloses using a GPS-enabled wireless device to track daily commutes of par-

ticipating commuters. Kirshenbaum col. 2 ll. 27-34. A central computer receives the commute data and makes recommendations on carpooling. *Id.* at col. 2 ll. 51-54. Marcus teaches a method for converting geographic locations to direct marketing areas. Marcus at 0008. Marcus explains that direct marketing areas are desirable for sales and marketing purposes. *Id.* at 0006.

Based on Marcus' teachings, the examiner concluded that one of skill in the art would understand that geographic location information is relevant when obtaining data for sales and marketing purposes. Examiner's Answer of Feb. 18, 2010, at 19. As such, the examiner found that Marcus provided the motivational link to modify Jaffe with Kirshenbaum's GPS-enabled device. *Id.* This modification provides Jaffe's information requestor with the benefit of knowing where received sales and marketing data were obtained.

The Board affirmed the examiner's rejection and adopted the examiner's analysis as its own. *Ex parte Sheldon Breiner*, No. 2010-009969, at 5 (B.P.A.I. Nov. 9, 2010). Subsequently, the Board denied Dr. Breiner's petition for rehearing. *Ex parte Sheldon Breiner*, No. 2010-009969 (B.P.A.I. Feb. 10, 2011). Dr. Breiner appeals the Board's decision.

## II.

"A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). This court reviews the Board's ultimate conclusion of obviousness *de novo* and the underlying factual findings for substantial evidence. *In re Klein,* 647 F.3d 1343, 1347

(Fed. Cir. 2011). Under the substantial evidence standard of review, this court will not overturn the Board's decision if a reasonable mind might accept the evidence as adequate to support a conclusion. *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000). The identification of analogous prior art is a factual question. *In re Bigio*, 381 F.3d 1320, 1324 (Fed. Cir. 2004). During examination proceedings, claim language is given its broadest reasonable interpretation consistent with the specification and reviewed by this court for reasonableness. *In re Morris*, 127 F.3d 1048, 1055 (Fed. Cir. 1997).

### III.

On appeal, Dr. Breiner argues the Board erred in three key respects. First Dr. Breiner argues that Jaffe does not disclose making "periodic observations." Second, Dr. Breiner argues that Marcus is not analogous art. Third, Dr. Breiner argues even if Marcus was analogous art, the combination of Jaffe, Marcus, and Kirshenbaum does not meet the wireless communication device with a positioning means limitation.

### A.

Dr. Breiner disputes the examiner's conclusion that Jaffe expressly discloses instructions to make "periodic observations." The examiner found that Jaffe's "reporting schedule to provide received data to the data requester" expressly discloses "periodic observations." Examiner's Answer of Feb. 18, 2010, at 4-5.

The ordinary meaning of "schedule" is "a list of *recurring* events." Webster's New World Dictionary, 3d College Ed. 1199 (1988) (emphasis added). A "reporting schedule to provide received data" thus contemplates providing observed data at recurring times—i.e., providing periodic observations of data.

Moreover, Jaffe teaches that the "reporting schedule" is sent to email recipients along with a "reply by date." Jaffe at 0038. Significantly, the specification separately recites the "reporting schedule" and the "reply by date" within a single list of items. *Id.* By doing so, the specification discloses and distinguishes deadlines for reporting recurring observations ("reporting schedule") from a single deadline for reporting a single observation ("reply by date"). Because Jaffe contemplates instructions to report observations at recurring times, substantial evidence supports the examiner's finding that Jaffe discloses "periodic observations."

## B.

Next, Dr. Breiner disputes the examiner's conclusion that Marcus and the '051 application are both within the art of "market analysis." As an initial matter, the PTO contends that Dr. Breiner waived any non-analogous art arguments by not raising them before the Board. This argument is without merit, as Dr. Breiner sufficiently exhausted his non-analogous art arguments before the Board. Specifically, Dr. Breiner argued below that Marcus cannot serve as the motivation to combine Jaffe with Kirshenbaum. *See* Breiner's Substitute Appeal Brief to the Board of January 8, 2010, at 25. Thus, we consider Dr. Breiner's non-analogous art arguments.

The examiner found both Marcus and the '051 application were within the same art of "market analysis." Examiner's Answer of Feb. 18, 2010, at 6. A reference qualifies as prior art for an obviousness analysis only when it is analogous to the claimed invention. *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1321 (Fed. Cir. 2011). Two tests govern the scope of analogous prior art: (1) whether the art is from the same endeavor, regardless of the problem addressed and, (2) if the refer-

ence is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved. *Bigio*, 381 F.3d at 1325.

Marcus converts geographic areas to direct marketing areas. Marcus at 0008. Marcus teaches that this conversion provides data "useful for business people for marketing and advertising purposes." *Id.* at 0006. In other words, Marcus modifies data so that it can be more effectively used for market analysis. Thus, Marcus is within the art of market analysis.

The '051 application specification delineates a broad field of endeavor that also includes the art of market analysis. The specification states the invention may be used for "a wide range of modes and purposes of data collection," including competitive analysis, market surveys, market intelligence, and consumer sampling. '051 application at 0005. In fact, the specification describes an embodiment where users collect price and brand data. *Id.* at 0052. Accordingly, substantial evidence supports the Board's finding that the '051 application, like Marcus, is within the field of "market analysis."

C.

Finally, Dr. Breiner argues that Marcus would not have motivated a skilled artisan to modify Jaffe with Kirshenbaum's GPS-enabled wireless communication devices. Dr. Breiner argues that Marcus would only motivate modifying Jaffe to convert geographic data to direct marketing areas. Dr. Breiner's argument is unpersuasive, as Marcus is cited as a motivation to combine Jaffe with Kirshenbaum, not as a motivation to modify Jaffe in accordance with Marcus' teachings. *See* Examiner's Answer of Feb. 18, 2010, at 6-7.

The examiner correctly found that combining Jaffe with Marcus and Kirshenbaum meets the "wireless communication devices [] equipped with a positioning means" limitation. *Id.* "[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007). Under Marcus, a skilled artisan would recognize that knowing the geographic locations associated with sales and marketing data is desirable. As such, a skilled artisan would have been motivated to combine Jaffe's wireless communication devices with Kirshenbaum's GPS-enabled devices to reap the benefits of determining where sales and marketing data were obtained. Combining Jaffe's data collection system with GPS-enabled wireless devices from Kirshenbaum is no more than "the predictable use of prior art elements according to their established functions." *Id.* at 417. Therefore, the combination of Marcus and Kirshenbaum renders it obvious to modify Jaffe with a wireless communication device equipped with a positioning means.

## IV.

This court has also considered Dr. Breiner's remaining arguments and find them unpersuasive. Because the Board correctly determined the '051 application's claims are obvious to one of ordinary skill in the art, this court affirms.

## AFFIRMED